## TAYLOR *v.* LEHMAN.

[No. 1,785. Filed Feb. 16, 1897. Rehearing denied May 26, 1897.]

VERDICT.—*Practice.*—*General and Special Verdict.*—Where the jury at the request of one of the parties returns a special verdict, it is the duty of the court to disregard the general verdict returned, where the same is inconsistent with the special verdict. *p. 587.*

LANDLORD AND TENANT.—*Repairs.*—*Measure of Damages.*—Where a landlord agrees to make certain repairs and fails to do so, the measure of damages is the difference in the rental value of the premises with the repairs and the rental value without the repairs. *p. 587.*

SAME.—*Attorney's Fees.*—A provision in a lease for the recovery of attorney's fees in case it becomes necessary to bring an action for the rent does not apply where by reason of a set off or counterclaim there was nothing due the landlord when his action for rent was commenced. *pp. 587, 588.*

SAME.—*Promise to Repair.*—*Consideration.*—A promise to repair, made by a landlord to his tenant during the tenancy, and without other consideration than such tenancy, cannot be enforced. *p. 591.*

From the Allen Superior Court. *Reversed.*

*E. J. Woodworth, William P. Breen* and *John Morris, Jr.,* for appellant.

*William J. Vesey* and *Owen N. Heaton,* for appellee.

ROBINSON, J.—This cause was transferred to this court by the Supreme Court.

Appellant sued appellee to recover certain rent alleged to be due for the use of a store building. The appellee answered in seven paragraphs; the first was a general denial; the fourth, payment; and the seventh, a plea of surrender. Demurrers were sustained to the fourth and fifth paragraphs. The second paragraph of answer avers, in substance, that while the appellee was occupying the premises he and the appellant entered into an agreement whereby, in con-

Taylor *v.* Lehman.

sideration that the appellee would pay all the cost of enclosing the windows of said building in excess of $112.50, and would leave these improvements in the building as appellant's property when appellee vacated the premises, appellant agreed that she would pay $112.50 towards enclosing said windows, and would also repair the cellar; that the windows were enclosed and appellant paid $112.50 towards the cost thereof, but that she wholly failed and neglected to repair the cellar, and that by reason thereof said premises became damp and foul, and the rental value thereof diminished $50.00 per month to appellee's damage, a portion of which sum, equal to any amount that might be found due appellant, he asked to be set off against the same, and that he have judgment for the balance. The sixth paragraph of answer is like the second, except it is alleged that the cellar was to be repaired within a reasonable time, which was three months. The case was put at issue by replies to appellee's affirmative pleadings, and at appellant's request the jury made a special finding of the facts. A motion by appellant to send the jury back to their room to make a proper finding of the facts was overruled, as were also appellant's motions for a *venire de novo*, for a new trial, and for judgment on the special verdict. A remittitur by appellee of $140.00 was entered, and judgment then rendered in his favor for $127.50.

The first assignment of error discussed by appellant's counsel is the overruling of the motion for a *venire de novo*.

By the special verdict the jury found that the defendant should have damages in the sum of $267.50, if the law was with him; and then by a general verdict the jury found for the defendant, and assessed his damages at $190.00.

When the special verdict was demanded by the appellant neither the court nor the jury could disregard it. The jury exhausted its power in the case when it returned the special verdict demanded, and it was not only within the power, but it was the duty of the court to disregard the general verdict. *Todd* v. *Fenton*, 66 Ind. 25; *Louisville, etc., R. W. Co.* v. *Balch*, 105 Ind. 93.

The jury had found that the appellant had agreed to repair the cellar, and that it had not in fact been repaired, and that during the time appellee occupied the premises after that agreement was made, the rental value of the building was $80.00 per month, and if the repairs had been made the rental value would be $100.00 per month.

If there was, in fact, an agreement to repair the cellar, then the measure of damages would be the difference between the rental value of the premises with the repairs and the rental value without the repairs. The jury found that the agreement to repair the cellar was made on the — day of March, 1893, and that the repairs were to be made at once. The new year of the tenancy begun on April 1, following the date of the agreement, and from the facts found the building was worth $20.00 per month less for the time appellee occupied the building until he moved out, or a total of $380.00. The jury further found that the rent for November, 1894, if due, was $112.50, and that it had not been paid. The difference between these amounts is the amount named by the jury in the special verdict.

The jury further found that "the value of the attorney fees for plaintiff in prosecuting this cause is $75.00," and this finding is within the terms of the lease, which was filed with the complaint as an exhibit, and it is contended by appellant's counsel that the attorney fee and the month's rent, with interest,

should have been added together and the sum taken from the $380.00.

Construing the finding as a whole, its effect is, that when appellant filed her complaint there was nothing due her from the appellee. There being nothing due for rent which appellant could recover in an action against the appellee, no attorney fee could be allowed. The same would be true of interest.

In the case of *Dawson* v. *Shirk*, 102 Ind. 184, Mitchell, J., said: "Where a special verdict or special finding of facts is returned, nothing remains for the consideration of the court except to render the proper judgment on the facts found according to the law, and when the jury assess the amount of the recovery, the data furnished and facts found must be so inconsistent with the amount assessed as that the two cannot be reconciled in order to justify the court in disregarding the assessment."

We think the finding of the jury is sufficiently definite and certain to enable the assessment of the proper amount of damages sustained by the appellee. It can not be said that the filing of a remittitur by the appellee was an admission that the damages were not correctly assessed. There is no reason why appellee was not entitled to damages for the whole nineteen months, if he was entitled to damages for the year.

The first reason assigned for a new trial is, that the special verdict of the jury is not sustained by sufficient evidence. It is contended that there is no evidence to support the finding of the jury that in March, 1893, the appellant entered into a contract with appellee whereby appellant agreed to repair the cellar and pay $112.50 towards the cost of enclosing the windows, if appellee would pay so much of the cost of enclosing the windows as exceeded $112.50.

The duty of appellant to repair did not arise out of

the relation of landlord and tenant, and there is no covenant in the lease to make repairs. If there was an agreement by appellant to repair the cellar it must be supported by a new and different consideration from that provided in the lease.

"A promise to repair, made after the lease is entered into, is a mere *nudum pactum*, and no liability exists for a failure on his [the landlord's] part to make such repairs." *Purcell* v. *English*, 86 Ind. 34, and cases cited; *Harry* v. *Harry*, 127 Ind. 91; *Mull* v. *Graham*, 7 Ind. App. 561; *Mattler* v. *Strangmeier*, 1 Ind. App. 556.

We think it is evident that if there was any consideration for the agreement to repair the cellar, it was outside of the agreement to enclose the windows, for in all the conversations concerning the repairing of the cellar the appellee said the cellar must be repaired or he would not occupy the building any longer. The appellee says they agreed about enclosing the windows, and then, in the same conversation, "he [Mr. Taylor] says, 'we will do something for the cellar, we will cement or gravel it; I will send some one here to see about it,' and I says, something will have to be done with it or I cannot continue to occupy the building." Again the witness says: "Mr. Taylor said, after we came to an understanding about the windows, he said, 'the building is costing me more than the rent we are getting justifies,' and he says, 'we will have to do something with the cellar, cement or gravel it.' I said, you will have to do something or we cannot remain in the building. He said, 'I will send some one up to see about it.' " On cross-examination the witness testified to substantially the same thing, that if the cellar was not fixed he could not continue as a tenant of the building, and that Taylor said he would send some one up to see which was best, cement or gravel. The wit-

ness, Deshour, testified, "they were speaking about fixing up the cellar with the rest, and Mr. Taylor said he would attend to it; something had to be done, either had to be cemented or sand put in it, something had to be fixed up; he said he would send a man around to look after it. He [appellee] said it ought to be done or he could not stay in the building. He [Taylor] said he would see it was done, he would send a man around to look after it, something would have to be done, either cement or gravel it; or something."

The agreement to enclose the windows was entirely separate from the contract of tenancy. Neither of the parties was under any obligation to enclose the windows. That agreement was complete in itself, and was carried out by both parties. Nowhere does the appellee say that he will not pay his agreed part on the windows if the cellar is not repaired, but in every instance he says if the cellar is not repaired he will not continue to occupy the building.

It is true, the conversation about the windows and the cellar was all one conversation, but it appears from appellee's evidence that the alleged promise to repair the cellar was "after we had come to an understanding about the windows." When this conversation took place his tenancy would expire in less than one month. He could vacate the premises at that time and nothing he said in that conversation would bind him to keep the building another year, whether the cellar was repaired or not. Even if there was a promise on Taylor's part to repair the cellar, there was no agreement on appellee's part to keep the premises, nor was there any promise on appellee's part to do anything in consideration that the repairs should be made.

We think there was some evidence to show that appellant did promise to repair the cellar, but there is

no evidence of any consideration for such a promise, and the belief that there was no consideration for such a promise is strengthened by the conduct of the appel-lee in paying the stipulated rent each month for the nineteen following months.

A promise to repair made by a landlord to his tenant, during the tenancy, and without other consideration than such tenancy, cannot be enforced.

For the above reasons we think the court erred in overruling appellant's motion for a new trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

## ON PETITION FOR REHEARING.

ROBINSON, J.—We have carefully considered the reasons urged by appellee for a rehearing of this appeal, but are still of the opinion that a correct conclusion was reached on the former hearing. The only question presented in the petition is the construction placed upon the evidence as to certain repairs. This question was fully argued in the original briefs, and was decided on the former hearing. The agreement to repair the windows was carried out, as shown by the evidence, but there is nothing in the evidence as to how long the tenant would continue to occupy the premises, or that he would continue to occupy them at all after the close of that year.

The tenancy would expire in less than a month when the conversation between the parties was had, and the subject-matter of that conversation may have been a tenancy for one year, or for six months, the evidence does not disclose. It is shown that the windows were repaired and that the cellar was never repaired, and it also appears that the tenancy did continue for one year and for seven months of another year. As

we said in the original opinion, the subsequent conduct of the parties strengthens the belief that if there was an agreement reached as to the continuation of the tenancy it was done without reference to the repairs of the cellar.

Petition overruled.