**WILLIE'S CONSTRUCTION COMPANY, INC., Appellant–Plaintiff,**

v.

**Martin E. BAKER and Vickie Baker, Appellee–Defendant.**

No. 71A05–9111–CV–364.

Court of Appeals of Indiana, Fifth District.

July 29, 1992.

Mark D. Boveri, David R. Kibbe, Barnes & Thornburg, South Bend, for appellant-plaintiff.

Frederick C. Boynton, Boynton, Kamm, Esmont & Zawalich, South Bend, for appellee-defendant.

BARTEAU, Judge.

Willie's Construction Company, Inc. ("Willie's") appeals the award of damages to Martin and Vickie Baker for Willie's breach of contract in constructing the Baker's house. The Bakers cross appeal the trial court's award of attorney's fees and interest to Willie's. We affirm the award of damages to the Bakers and reverse the award of attorney's fees and interest to Willie's.

## FACTS

In April, 1989, Willie's contracted to construct a new home for the Bakers on their lot in South Bend, Indiana. The contract specifically required that the basement walls be one hundred inches tall—twelve inches higher than the standard height of eighty-eight inches. The Bakers agreed to pay an additional $414.00 for this modification. The total purchase price of the house, including agreed upon modifications, was $54,401.95 to be paid in four installments.

Construction started on August 22, 1989, and the house was expected to be completed within 120 days. During construction, Willie's mistakenly poured eighty-eight inch basement walls instead of the one hundred inch walls as required by the contract. In late October, Mr. Baker discovered the mistake. When he brought the problem to Willie's attention, Willie's admitted that they "goofed up." (R. 269).

Willie's agreed to allow the Bakers to withhold a portion of the second installment that was due until the problem could be resolved and the house completed. However, Willie's was hesitant to continue work because they feared the Bakers would refuse to pay for the house. Willie's slowed down construction and the house was not completed until April, 1990, eight months after it was started. The Bakers

paid only $41,500.00, but were allowed to move in the house after agreeing to keep $10,000.00 in an escrow account until the dispute could be settled.

The Baker's expert, Tim Lykowski, estimated that the cost of increasing the height of the basement walls in the completed home by one foot would be $24,000.00. This would involve lifting the house off its foundation and then adding to the top of the basement walls. There was also evidence that had Willie's corrected the mistake when it was first discovered the cost to repair would have been substantially less. Willie's experts, Dennis Dillman and Robert Hawley, each testified that increasing the height of the walls would have no effect on the fair market value of the home.

The trial court found Willie's had breached the contract and awarded the Bakers a judgment for repairs and other damages in the amount of $25,253.32. The court further found that Willie's was entitled to the $12,587.95 balance due under the contract, attorney's fees of $3,147.00 and prejudgment interest in the amount of $5,276.59. Thus, the Bakers' net award was $4,241.78.

Willie's raises one issue on review:

Whether the trial court erred in basing its award of damages for breach of contract on the cost of remedying the breach rather than using the diminution in fair market value caused by the breach.

On cross appeal the Bakers also raise one issue:

Whether the trial court erred in awarding Willie's attorney's fees and prejudgment interest on its claim.

## MEASURE OF DAMAGES

There was no dispute that the cost to restore the property was $24,000. The only issue Willie's raises is whether cost to repair is the correct measure of damages.

■ ■ This court may not reverse a damage award unless it is based on insufficient evidence or is contrary to law. *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, 275. In

determining whether there is sufficient evidence, we may not weigh the evidence nor judge the credibility of the witnesses. If the award of damages is supported by the record, the determination of damages is within the sound discretion of the trial court. *Indiana Univ. v. Indiana Bonding & Sur.* (1981), Ind.App., 416 N.E.2d 1275, 1288.

■ Neither party requested special findings of fact, and none were made. In the absence of such, the ruling of the trial court is presumed to be based on findings supported by the evidence and if the judgment is sustainable on any legal theory, it must be affirmed. *Complete Elec. Co. v. Liberty Nat'l. Bank* (1988), Ind.App., 530 N.E.2d 1216, 1218.

"Ordinarily, in a breach of contract case the injured party's damages are measured by the loss in value *to him* of the other party's failure to perform." Restatement (Second) of Contracts § 347(a) (emphasis added).

The fair market value of a home does not necessarily reflect the value to the homeowner. As many homeowners discover, it is not unusual to find that the cost of additions or improvements made in order to conform a home to the owner's personal tastes, often do not result in a corresponding increase in the home's market value. The provision in the contract requiring one hundred inch basement walls was an unusual one for which there was an extra $414.00 charge. Walls taller than eighty-eight inches are extremely rare according to Willie's experts. This was a feature that the Bakers wanted from the beginning and Willie's specifically agreed to provide it. It is difficult to put a valuation on the difference in height because the Bakers wanted this modification as a matter of personal taste, not because it would increase the value of their home.

■ In breach of construction contract cases, the proper measure of damages is either 1) the difference between the value of the building as constructed and what its value would have been had it been constructed in accordance with the contract, or 2) the reasonable cost of curing the defects

to make the building conform to the contract. *Clark's Pork Farms v. Sand Livestock Sys.* (1990), Ind.App., 563 N.E.2d 1292, 1297.

The factor that determines which of the alternative measures of damages applies is whether the defects can be remedied without taking down and reconstructing a substantial portion of the building, or whether the defects could be repaired at a reasonable cost, or, as it is often stated, whether construction and completion in accordance with the contract would involve unreasonable economic waste.

*Id.* (*quoting Sanborn Elec. v. Bloomington Athletic Club* (1982), Ind.App., 433 N.E.2d 81, 89).

■ Willie's argues that if the Bakers are allowed to recover repair cost when it exceeds the difference in fair market value, then the Bakers will be placed in a position better than they would have been in had no breach occurred. Willie's argues that the Bakers could choose not to repair the home and sell it, profiting to the extent that the repair cost exceeds market value. The Restatement of Contracts specifically discusses this matter:

[I]f the performance [of a construction contract] is defective ... it may not be possible to prove the loss in value to the injured party with reasonable certainty. In that case he can usually recover damages based on the cost to remedy the defects. Even if this gives him a recovery somewhat in excess of the loss in value to him, it is better that he receive a small windfall than that he be undercompensated by being limited to the resulting diminution in the market price of his property.

Restatement (Second) of Contracts § 348 comment c.

This issue was addressed by this court in *General Outdoor Advertising Co. v. La Salle Realty Corp.* (1966), 141 Ind.App. 247, 218 N.E.2d 141. The court stated that although the difference in market value

seems equitable from a defendant's position, it is rather discriminate against a plaintiff. What if a plaintiff does not

want to sell his property? In this posture the effect of the rule would be where the restoration costs exceed the 'before and after' measure, a plaintiff would receive the latter. Consequently, if he did not desire to sell the building, he would not receive damages sufficient to restore the building to its original condition. The 'before and after' test, if used in cases of non-permanent injury, is in reality forcing the plaintiff to sell the building in order to restore himself to the same position enjoyed before the injury. Certainly such a measure of damages partially compensates a plaintiff for injury done to his building and affords some protection to a part of his property rights. However, it would seem more proper to place the plaintiff in a position where he could be unrestricted in the exercise of his property rights of continued ownership or alienation. When these considerations are weighed against the possible 'windfall' that might be given to a plaintiff, the former takes precedence over the latter.

*Id.* at 266, 218 N.E.2d at 151. Although the *La Salle* case involved a tort, the reasoning does not change merely because the injury here resulted from a breach of contract.

Willie's cites *City of Anderson v. Salling Concrete Corp.* (1981), Ind.App., 411 N.E.2d 728, for the proposition that the court should never award the cost of repair if it is more than the difference in market value of the property before repairs compared to the value of the property after repairs. In *Salling* this court refused to award the $590,731.08 needed to repair the plaintiff's land when the value of the land after repair would be only $271,800.00. However, *Salling* merely states that the cost of restoration cannot be adopted as the measure of damages where the cost of restoring the property would exceed the value of the property in its restored condition. *Id.* at 734. Here the repair cost of $24,000 does not exceed the value of the home after repair, which will be approximately $70,000. (R. 284). Therefore, the award is not contrary to the holding in *Salling.*

■ Willie's also argues that increasing the height of the walls by lifting up the house would result in economic waste because it would require tearing down and reconstructing a substantial part of the home. Therefore, according to Willie's, the court should have awarded the difference in market value instead of the cost to remedy the problem.

■ "Economic waste" is a term of art which has not been defined in Indiana. Other jurisdictions have described economic waste as "the destruction of usable property," *Gold Rush Invs., Inc. v. G.E. Johnson Const. Co., Inc.* (1990), Colo.App., 807 P.2d 1169, 1174; *Stege v. Hoffman* (1991), Mo.App., 822 S.W.2d 517, 521; *N.W. Goodell Const. Co., Inc. v. Monadnock Skating Club, Inc.* (1981) 121 N.H. 320, 429 A.2d 329, 333; "substantial undoing" of the contractor's work *City of Charlotte v. Skidmore, Owings and Merrill* (1991), 103 N.C.App. 667, 407 S.E.2d 571, 581, and a situation wherein "the cost of reconstruction exceeds the original cost of construction," *Johnson v. Garages, Etc., Inc.* (1985), Minn.App., 367 N.W.2d 85, 86. "Economic waste exists only when the cost to repair measure for damages would result in unreasonable duplication of effort. Further, economic waste is not present and the difference in value measure cannot be used unless the building would be substantially destroyed by completely remedying the defects." *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.* (1979), 124 Ariz. 242, 603 P.2d 513, 524–525. Therefore, it appears that in only extreme cases should the court find that the cost to repair involves economic waste. The breaching contractor has the burden of proving that curing defects would cause economic waste and any reasonable doubt will be resolved against him. *Sanborn, supra,* 433 N.E.2d at 89.

Both the Bakers and Willie's presented evidence as to the amount of "reconstructing" that would be required in raising the height of the basement walls. Although the job here would involve a lot of work, it would not involve much undoing and recon-

structing of Willie's work. After the house is raised some minor adjustments must be made. For example, the house's gas lines, water lines and sewer lines will have to be lengthened by a foot, as will the pipes on the furnace and water heater; the front and back doors to the home must be altered, the front porch must be raised and column supports in the basement must be replaced. However, the work that Willie's performed will remain virtually intact.

The record contains sufficient evidence from which the trial court could find that the defects could be remedied without taking down and reconstructing a substantial part of the building. Accordingly, we hold that Willie's failed to carry its burden of proving that increasing the height of the basement walls would result in unreasonable economic waste.

It has been held many times by this court that to reverse a judgment on the ground that the damages are excessive, it must appear that the damages assessed were so grossly and outrageously excessive as to induce belief that they were the result of prejudice, partiality or corruption. *James I. Barnes Const. Co. v. Washington Township* (1962), 134 Ind.App. 461, 470–71, 184 N.E.2d 763, 766. We believe the trial court fairly and impartially passed upon the question of damages in this case. "It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Id.* at 469, 184 N.E.2d at 766 (*citing Pokraka v. Lummus Co.* (1952), 230 Ind. 523, 532, 104 N.E.2d 669, 673). We find the trial court's decision to award the Bakers the cost of repairing their home is not contrary to law.

## ATTORNEY'S FEES AND PREJUDGMENT INTEREST

Indiana follows the "American Rule" which requires each party to litigation to pay their own attorney's fees. *City of Marion v. Antrobus* (1983), Ind.App., 448 N.E.2d 325, 331. Attorney's fees are not allowable in the absence of a statute, or in the absence of an agreement or stipulation between the parties. *Kikkert v. Krumm* (1985), Ind. 474 N.E.2d 503, 504–05. A contract that allows for the recovery of attorney's fees will be enforced according to its terms unless the contract is contrary to law or public policy. *Honey Creek Corp. v. WNC Dev. Co.* (1975), 165 Ind. App. 141, 151, 331 N.E.2d 452, 459.

Article V of the contract between the Bakers and Willie's contains the following sentence: "Owner shall pay all of Contractor's attorney fees and cost for the enforcement of this contract." Article VI states that 3% interest per month shall be charged on any amounts due to the contractor after the house has been substantially completed. Accordingly, the trial court awarded Willie's the cost of attorney's fees and interest on the unpaid portion of the contract price.

Willie's sued the Bakers to recover the contract price. However, the reason the Bakers refused to pay was because Willie's had breached the contract:

ARTICLE I. The Contractor agrees to provide the materials as specified and to perform all the work shown on the drawings and subscribed in the specifications and to do everything required by the General Conditions of the Contract, the Specifications and the Drawings.

ARTICLE II. The Contractor agrees that the work under this contract shall be substantially complete 120 days after work commences.

(R. 167). Willie's breached Article I when it failed to build the house according to the specifications and it breached Article II by failing to complete the house within 120 days. To force the innocent home buyer to pay interest and the expenses of a breaching home builder would be against public policy.

"Where a party prevails on a contract where fees are provided but the opposing party prevails on certain counterclaims, the recoverable attorney fees should be reduced 'in proportion to the amount recovered on the [contract] less the amount re-

ceived on the counterclaim.' " *Burras v. Canal Const. and Design Co.* (1984), Ind. App., 470 N.E.2d 1362 (*quoting Pioneer Constructors v. Symes* (1954), 77 Ariz. 107, 267 P.2d 740, 744). Under this formulation, Willie's attorney's fees should be reduced to zero since the proportion of the Bakers' recovery to Willie's recovery exceeds 100%.

In *Taylor v. Lehman* (1897), 17 Ind.App. 585, 46 N.E. 84 *reh'g den.* 17 Ind.App. at 591, 47 N.E. 230, a lessor sued her lessee for $112.50 in unpaid rent. The lessee pleaded a setoff of $380.00 against that rental for damages resulting from the lessor's failure to make certain repairs to the leased premises. The lease contained a provision providing for the recovery of attorney's fees in case it became necessary to bring an action for the rent. This court stated that because the lessee's setoff for damages exceeded the lessor's claim, the lessor could not recover any attorney's fees or interest:

> Construing the finding as a whole, its effect is, that when appellant [the lessor] filed her complaint there was nothing due her from the appellee [lessee]. There being nothing due for rent which appellant could recover in an action against the appellee, no attorney fee could be allowed. The same would be true of interest.

*Id.* at 588, 46 N.E. at 85.

Not permitting a party to recover attorney's fees under a provision in the contract unless he makes a successful recovery on the merits of his complaint is a sound policy:

> While a contractual provision allowing recovery of attorney's fees by a party is not of itself violative of public policy, a construction of such provision allowing a recovery in unsuccessful actions would create an unnecessary likelihood of frivolous or oppressive lawsuits. The purpose of allowing an award of attorney's fees in a civil action is to more fully compensate a party who has successfully enforced his legal rights in court rather than to provide that person with free access to the courts at the expense of his opponent.

*Rauch v. Circle Theatre* (1978), 176 Ind. App. 130, 141, 374 N.E.2d 546, 554.

To allow the recovery of attorney's fees to a party whose claim was completely diminished by a counterclaim would not further the purpose of compensating the successful party. Enforcing the contract provision here, would provide Willie's attorney's fees and interest on an award that was more than set off by the Bakers' counterclaim. We find that such an award, particularly in this case where the Bakers felt that they were wronged, put the disputed amount in escrow, and then proved in court that Willie's had wronged them, would be contrary to public policy. Therefore, the trial court erred in awarding attorney's fees to Willie's.

Similarly, we reverse the award of prejudgment interest to Willie's. This court has stated that "the purpose of prejudgment interest is to compensate a party for having been deprived the use of his money...." *Koppers Co., Inc. v. Inland Steel Co.* (1986), Ind.App. 498 N.E.2d 1247, 1256. Therefore, a plaintiff should recover prejudgment interest only on the balance due after taking into account a defendant's offsetting counterclaim. *Id.* Because Willie's secured no net recovery it was an error for the trial court to award Willie's prejudgment interest.

We affirm the award of damages to the Bakers and reverse Willie's award of attorney's fees and interest.

SHIELDS and SHARPNACK, JJ., concur.