**Robert ADAMS and Toni Adams, Appellants–Plaintiffs,**

v.

**R.R. McCLEVY and Betty McClevy, Appellees–Defendants.**

**No. 49A02–9105–CV–192.[1]**

Court of Appeals of Indiana, Fifth District.

Dec. 23, 1991.

---

**1.** This case has been diverted to this office by order of the Chief Judge.

Robert C. Rothkopf, Pardieck, Gill & Vargo, Indianapolis, for appellants-plaintiffs.

James A. Goodin, Patrick L. Miller, Goodin & Kraege, Indianapolis, for appellees-defendants.

SHARPNACK, Judge.

This case presents the contrast between between two personal injury claims in which the jury found liability on the part of the defendants but awarded zero dollars in damages to each of the plaintiffs; on one claim we reverse, on the other we affirm. The plaintiffs, Robert and Toni Adams, appeal the verdict and judgment of the Marion Circuit Court which found that the defendants, R.R. and Betty McClevy, were 50% at fault for the accident in which the plaintiffs were injured, but which assessed damages of zero dollars against the McClevys. We affirm the judgment as to Toni, but we reverse the judgment as to Robert and remand for a new trial.

The plaintiffs have preserved three issues for review,[2] which we restate as follows:

1. Should the verdict be reversed either because it is clearly erroneous considering the facts of the case or because it is so clearly inadequate that it must have resulted from passion, partiality, or other improper motive on the part of the jury?

2. Did the trial court improperly refuse to instruct the jury that it could draw inferences unfavorable to the McClevys because R.R. McClevy did not testify at trial?

3. Did the trial court improperly refuse to instruct the jury that no fault could be attributed to any person who was not a party to the case?

R.R. and Betty McClevy own a double home located on North Gladstone Street in Indianapolis. The McClevys have lived in one portion—the south half—of the home continuously since they first purchased it in the early seventies, and they have rented out the other portion—the north half—almost continually since 1979. At the time of the plaintiffs' accident, the McClevys leased the other half of the double to Robert's brother John.

The McClevys have made various improvements to the house since they first bought it. In 1978 they decided to convert the basement into a garage, and they hired a contractor to construct a concrete driveway leading from the alley behind the house to the basement garage. This driveway is at ground level near the alley, but sinks to a depth of over five feet at the entrance to the basement garage. No fence or safety rail guards the edge of the driveway drop-off.

On the day of the accident, the plaintiffs went to John's home to have dinner. When they arrived, they parked in back of the double and entered through the side door. In order to enter through this door, they had to walk by the sunken driveway. They spent several hours at John's place having dinner and socializing with John and his girlfriend. During the course of the visit, Robert consumed a quantity of alcohol.

The plaintiffs left after dark. As they walked back to their car, Robert fell into the sunken driveway near the house. Toni attempted to aid him and fell in herself. Robert suffered a compound fracture in which the bone penetrated the skin.

Robert's fracture required extensive treatment including surgery to insert screws and stabilizing rods in the injured leg, the use of various braces to stabilize the bones while they healed, and the use of an electric stimulation device to assist the bones in mending when they failed to mend by normal means. Robert's medical care cost $13,035.59. These bills were paid by Maxicare which informed the plaintiffs that it would not demand repayment unless the plaintiffs recovered against the McClevys.

**2.** In their statement of the issues, the plaintiffs also challenged the trial court's refusal to give the jury their tendered instruction number 6. They did not present any argument on this issue, however, and they have therefore waived it. Indiana Appellate Rule 8.3(A)(7); *Alexander v. State* (1983), Ind., 449 N.E.2d 1068, 1073; *Turnpaugh v. Wolf* (1985), Ind.App., 482 N.E.2d 506, 510.

The plaintiffs argue that the jury's verdict awarding damages of zero dollars is both contrary to the evidence—and thus clearly erroneous—and so inadequate as to establish that the jury was motivated by passion, prejudice or other improper motive. When reviewing a claim that a jury award of no damages is clearly erroneous, we may not reverse unless the evidence points unerringly to a conclusion not reached by the jury. *McCarty v. Sparks* (1979), 180 Ind.App. 251, 252, 388 N.E.2d 296, 297. When reviewing a claim that a damage award is insufficient, unless it is obvious that the award must have been the result of passion, prejudice, or improper motive because it could not be explained by any other reasonable ground, we must affirm. *Crump v. Rhodes* (1986), Ind.App., 488 N.E.2d 741, 742–743. In reviewing a damage award, we look only to the evidence and inferences which support the award. *Crump,* 488 N.E.2d at 742. If the damage award falls within the bounds of the evidence presented at trial, we must affirm. *Annee v. State* (1971), 256 Ind. 686, 689, 271 N.E.2d 711, 712, *rehearing denied* 256 Ind. 686, 274 N.E.2d 260.

▬▬▬ Viewing the evidence in the light most favorable to the award, we find that the plaintiffs produced evidence showing that Robert incurred medical expenses of $13,035.59, but we also find that he admitted that these expenses had been paid by Maxicare. He also testified that Maxicare would not demand repayment unless he recovered a judgment against the McClevys. Insofar as the jury refused to award Robert any damages for these medical expenses, we cannot say that its verdict was guided by improper considerations or was contrary to the evidence. If Robert's medical expenses were the only items of damages for which the plaintiffs claimed compensation, we could hold that we would not disturb the verdict because the evidence could reasonably support the conclusion that Robert had sustained no loss as to these expenses. However, plaintiffs presented as to Robert other evidence on general damages such as pain and suffering, disfigurement, and permanent bodily impairment. Even if we accept that the jury awarded no damages because Maxicare paid Robert's medical expenses, we can find no acceptable explanation for its failure to award any damages for these other items of damage.[3]

The case at hand is quite similar to *McNall v. Farmers Insurance Group* (1979), 181 Ind.App. 501, 392 N.E.2d 520, *trans. denied,* Ind., 423 N.E.2d 593. In *McNall,* the appellant was injured when a motorcycle operated by an underage, uninsured driver collided with a motorcycle which he and another individual were riding. The appellant filed suit against his father's uninsured motorist carrier after the carrier denied coverage for the accident. The trial court granted summary judgment finding that the carrier did have coverage. The questions of liability and damages were then tried to a jury, which awarded the other passenger $6,000 in damages, but awarded the appellant no damages. In finding the jury's verdict inadequate, Judge Garrard wrote:

"The evidence presented by [the appellant] relating to his injuries was uncontested. The two treating physicians testified that David had suffered a severe compound comminuted fracture of the lower left leg; that his left leg is now 1½ inches shorter than his right leg requiring him to wear a built-up shoe for the remainder of his life, that his left leg is crooked, that both legs are scarred due to numerous skin grafts, and that he

---

**3.** The plaintiffs also argue that they produced evidence that they paid for chiropractic treatments, medications, and a special shoe device which Robert required because of his broken leg. In addition, they argue that they incurred expenses due to Toni's wrist and shoulder injuries. They assert that there was no evidence that Maxicare paid for these expenses. Further, they argue that evidence was produced that showed that Robert was required to use accu-

mulated sick pay to provide income while he was off work due to his injury.

We have reviewed the record and find that, while the plaintiffs may have presented evidence that they incurred these expenses, they have totally failed to present any evidence as to the amount of these expenses. There is likewise no evidence to quantify any loss incurred with regard to sick pay.

suffered from a bone infection that could possibly recur. The union of the bones is tenuous and subject to refracture, as occurred shortly before trial. [The appellant] and his mother testified that the leg tires quickly and is subject to swelling, making it difficult for [the appellant] to stand or walk for any length of time. It is clear from this uncontradicted evidence that the award of zero damages is inadequate since it bears no reasonable relationship to the substantial and permanent loss suffered by [the appellant]."

*McNall,* 181 Ind.App. at 509, 392 N.E.2d at 525.

Here, Robert's injuries are substantially similar to those suffered by the appellant in *McNall.* Robert suffered a compound fracture which resulted in shortening, scarring, and disfiguring of a leg. He suffered some degree of permanent impairment and weakness of the leg. Given these similarities, we agree with *McNall* that

"Where the trier of fact has found in favor of plaintiff on the issue of liability, and the evidence relating to injury is uncontroverted and establishes a substantial injury proximately caused by the defendant's negligence, an assessment of damages inconsistent with the uncontroverted evidence is improper and will be reversed."

*McNall,* 181 Ind.App. at 509, 392 N.E.2d at 525. The verdict of no damages for Robert is contrary to the evidence.

■ In contrast, the verdict of no damages as to Toni is not contrary to the evidence. Toni testified that she remembered hurting her left shoulder, left side and left wrist. She testified that she was not having any problems as of the time of trial. She testified that her wrist was not sprained and that she was able to drive a car to the hospital and did go in the ambulance with Robert. She received no treatment at the hospital on the night of the fall. In response to the question of her attorney at trial: "So, is it a fair statement that you really weren't hurt that bad?", she testified: "Yes, sir, that's right." She did go to a doctor, perhaps three or four days later, because her shoulder hurt when she would breathe and she was concerned that perhaps she had been injured more than she had thought, but also noted that lifting Robert's leg in a cast was heavy lifting. She was x-rayed and no fractures were shown. She was given a combined muscle relaxer and pain reliever. Directly on an aspect of the issue of damages for loss of consortium, she testified only that she and her Robert had intimate relations prior to the accident, but had none for seven or eight months after the accident.

The evidence of her injuries and damages was minimal. It would have supported a verdict of damages in some amount, but it was of such character that a jury should be free to determine that the burden of proof had not been carried on the damage issue. As Judge Robertson put it in *McCarty, supra,* the issue is "whether the *fact* of damages was established such that a finding of no damages is 'clearly erroneous as contrary to or not supported by the evidence ...' [citations omitted]." 180 Ind. App. at 252, 388 N.E.2d at 297 (emphasis in original). In Robert's case, the fact of damage was so established; in Toni's, it was not.

■ In affirming the judgment as to Toni, we must address the issue of the refused instructions regarding the inference to be drawn from lack of evidence being produced and allocation of fault to persons who are not parties (but not "nonparties") to a case. The trial court refused plaintiffs' tendered final instruction that stated, "The unexplained failure of a party to testify concerning facts peculiarly within his knowledge may give rise to an inference that had he testified the testimony would have been unfavorable to that party's cause." (Record, p. 133). The plaintiffs argue that the instruction is a correct statement of the law and was supported by the facts of the case because R.R. McClevy did not testify at the trial.

■ Normally a party is entitled to have a tendered instruction read to the jury if the instruction is a correct statement of the law, if it is supported by evidence adduced at trial, if it does not repeat material adequately covered in other instructions,

and if the substantial rights of the tendering party would be prejudiced if the instruction were not read. *Board of County Commissioners v. Arick* (1985), Ind.App., 477 N.E.2d 112, 114. We will not reverse the trial court for failing to give the best possible instructions; rather, we will affirm as long as the court gave instructions which adequately and correctly stated the applicable law. *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 97.

Regardless of whether Toni was entitled to this instruction, we cannot find that she was prejudiced by the court's failure to give it. Plaintiffs assert that R.R. McClevy had exclusive knowledge concerning improvements to the property where this accident occurred. Such facts would only be relevant on the issue of liability. The jury found in favor of Toni on that issue, however, and she has therefore failed to demonstrate prejudice warranting reversal on this ground.

■ Plaintiffs finally argue that the trial court committed reversible error when it refused to give their tendered instruction 3, which read:

> "Under Indiana law a Defendant has the right to name what is called a non-party if the Defendant contends an individual not a party is at fault with respect to Plaintiffs' injuries and damages. No such non-parties are named, so no allocation of fault may be made to any person not a party to this lawsuit."

(Record, p. 121).

The trial court properly refused this instruction. The court instructed the jury that it should allocate fault among the plaintiffs and the defendants and that the total fault *must* equal 100%. (Record, p. 118). The jury could not allocate fault to any other party under this instruction, and, indeed, the jury actually allocated 100% of the fault among the parties. Under these circumstances, the tendered instruction would have been cumulative in that it would have informed the jury that they must allocate all of the fault among the parties. In addition, the defendants were

not prejudiced by the instruction since the jury obviously allocated among the parties and did not allocate any fault to a nonparty. Plaintiffs have stated no ground for reversal.

■ Having decided that the jury verdict as to Robert was improper, we must now turn to the question of what relief is appropriate on remand to the trial court. Plaintiffs argue that we should remand for a new trial limited to the issue of damages. The McClevys argue that any new trial should be on liability and damages. We are again persuaded by the reasoning of *McNall* and the retrial must be on all issues.

In *McNall*, the appellant argued that the new trial should be limited to the question of damages because the jury had already found liability and because the issue upon which the court of appeals reversed was inadequacy of the damage award. The court rejected appellant's argument, writing:

> "Where a new trial must be had because of inadequate assessment of damages, it is often true that the inadequacy is a result of compromise by the trier of fact on the question of liability. In such cases, it is unjust to order a limited new trial since the issue of liability has not been fairly determined.
>
> \*    \*    \*    \*    \*    \*
>
> After reviewing the evidence, we conclude that the grant of a new trial on the issue of damages alone would be improper since the issue of liability was hotly contested and the evidence would have supported a verdict for either the plaintiffs or the defendants."

*McNall*, 181 Ind.App. at 510–511, 392 N.E.2d at 526. Here, liability was hotly contested and the facts could support a finding that Robert was more than 50% at fault for this accident or that the McClevys were not at fault. Under these circumstances, the jury may well have reached a compromise verdict, and it would be unfair to limit retrial to the issue of damages.[4]

---

**4.** In their reply brief, the plaintiffs argue that

the verdict could not have been a compromise

We find that the jury's verdict with regard to Robert was contrary to the evidence and was likely the result of compromise. We therefore reverse the verdict and judgment as to Robert and remand for retrial on all issues. We find the verdict with regard to Toni was not contrary to the evidence and we affirm the verdict and judgment with respect to her in all regards.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Costs assessed 50% to appellees and 50% to appellants.

RATLIFF, C.J., and RUCKER, J., concur.

because this is a comparative fault case in which the jury found the plaintiffs 50% at fault for the accident. They suggest that compromise verdicts are far less likely in a comparative fault system because the jury has to carefully consider comparative fault of the parties in reaching its apportionment of fault. While it may be true that compromises are less likely (or, perhaps, more difficult to put in effect), we cannot say that they are so unlikely as to render the rationale of *McNall* obsolete. Plaintiffs have cited no case overruling *McNall*, and we do not find plaintiffs' assertion that compromises are less likely under our comparative fault system sufficient to abandon *McNall* at this time.