Michael A. SALCEDO, DPM,
Appellant–Plaintiff,

v.

Frank C. TOEPP, et al., Appellees–
Defendants.

No. 71A03–9706–CV–189.

Court of Appeals of Indiana.

June 25, 1998.

Edmond W. Foley, Foley & Small, South Bend, for Appellant–Plaintiff.

Robert J. Palmer, May Oberfell & Lorber, South Bend, William N. Farabaugh, South Bend, for Appellees–Defendants.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff, Michael A. Salcedo, D.P.M. ("Dr. Salcedo"), joined the established podiatry practice of Appellee–Defendant, Frank C. Toepp, D.P.M. ("Dr. Toepp"), in the late 1980s. On December 31, 1990, Dr. Salcedo contracted with Dr. Toepp to purchase his practice. The transaction was effected through four written contracts executed by Dr. Salcedo and Dr. Toepp. A fifth contract, a written Employment Agreement, was executed by Dr. Salcedo and Dr. Toepp's wife, Appellee–Cross–Claimant, Rosemary W. Toepp, ("Mrs. Toepp"), for the purpose of continuing Mrs. Toepp's health insurance provided through the practice. Ultimately, litigation ensued on all the written contracts. A jury trial resulted in the following five verdicts: 1) a verdict in favor of Dr. Salcedo in the amount of $102,597.62 on his claim under the Purchase Agreement; 2) a verdict in favor of Dr. Salcedo on Dr. Toepp's counterclaim under the Purchase Agreement; 3) a verdict in favor of Dr. Toepp in the amount of $8,933.99 on his claim under his Employment Agreement; 4) a verdict in favor of Dr. Toepp on Dr. Salcedo's claim under the Lease Agreement, and 5) a verdict in favor of Dr. Salcedo on Mrs. Toepp's claim under her Employment Agreement.

The Toepps filed an Ind.Trial Rule 50 motion which the trial court granted in part, setting aside the first two verdicts listed above which pertain to the competing claims under the Purchase Agreement, and ordering a new trial on these claims. The trial court entered judgment on the other verdicts. Dr. Salcedo initiated the present appeal in which the Toepps raised several issues for cross-appeal. We reverse and remand with instructions that judgment be entered on all of the jury's verdicts. We further instruct the trial court to hold a hearing to determine an appropriate amount of attorney's fees to be awarded under the contracts.

### Issues

In total, Dr. Salcedo and the Toepps raise seven issues on appeal, which we restate and consolidate as follows:

I. Whether the trial court erred in setting aside the verdicts in favor of Dr. Salcedo pertaining to the parties' competing claims under the Purchase Agreement.

II. Whether the amount of the verdict/judgment in favor of Dr. Toepp on his claim under his Employment Agreement was inadequate as a matter of law.

III. Whether the verdict/judgment against Mrs. Toepp on her claim under her Employment Agreement was contrary to law.

IV. Whether an award of attorney fees is appropriate under the contracts.

### Facts

#### A. Terms of the Contracts

The evidence most favorable to the verdicts reveals that Dr. Salcedo obtained his D.P.M. in 1987. (R. 642–44). At that time, Dr. Toepp was a podiatrist with an established practice in South Bend, Indiana. (R. 649). Dr. Toepp also maintained an office in New Carlisle, Indiana. *Id.* As Dr. Toepp was approaching retirement, he decided to hire a young podiatrist to whom he could later sell his practice. (R. 646–49). In 1988,

Dr. Salcedo joined the practice as Dr. Toepp's employee. (R. 655).

On December 31, 1990, Dr. Salcedo and Dr. Toepp executed the following contracts: 1) a Purchase Agreement, Exhibit N,[1] under which Dr. Salcedo purchased Dr. Toepp's existing podiatry practice and the goodwill therein; 2) a Lease Agreement, Exhibit O, under which Dr. Salcedo leased the building used for the practice from Dr. Toepp; 3) a Consulting Agreement, Exhibit P, under which Dr. Salcedo agreed to pay Dr. Toepp for consulting services; and 4) an Employment Agreement, Exhibit Q, under which Dr. Toepp would work as Dr. Salcedo's employee. As noted above, a fifth contract, another Employment Agreement, Exhibit V, was executed between Dr. Salcedo and Mrs. Toepp. These written agreements which are the subject of this litigation were entered into to effect the sale of Dr. Toepp's South Bend podiatry practice to Dr. Salcedo, while enabling Dr. Toepp to keep his office in New Carlisle. (Ex. N).

The Purchase Agreement, which incorporated all the other agreements by reference, provided that Dr. Salcedo would purchase Dr. Toepp's practice for $251,275.00, with almost $80,000.00 of that amount allocated to the six-year noncompetition agreement which was contained in the Employment Agreement and read, in pertinent part, as follows:

> Upon termination of employment and for a three (3) year period thereafter, [Dr. Toepp] will not disclose, communicate, or divulge to any person, firm, partnership, association or corporation the names or addresses of patients, techniques, knowhow or other confidential information used in the business of [Dr. Salcedo]. Further, during said three year period [Dr. Toepp] shall not engage in any business in competition with the business of [Dr. Salcedo] within the geographical area of South Bend, Indiana, and that area within a ten (10) mile radius measured from [the South Bend podiatry office], either directly or indirectly as an officer, employee, consultant, partner, individual proprietor, manager, or as an investor contributing capital stock or purchasing any stock, or lease any

property which engages in or owns such a business.... As compensation for the foregoing non-competition agreement [Dr. Salcedo] agrees to pay [Dr. Toepp] the sum of $78,275.00, the terms and conditions of which is [sic] provided for in a Purchase Agreement entered into contemporaneously herewith between the parties.

(Ex. Q, ¶ 6). Thus, the term of the noncompetition agreement was to expire six years later on December 31, 1996. As partial payment for the practice, the Purchase Agreement provided that Dr. Salcedo would give Dr. Toepp a promissory note in the amount of $178,275.00 payable in sixty monthly installments of approximately $3,000.00 per month. (Ex. N, ¶ 3C). The Purchase Agreement had two clauses which addressed attorney fees. The first read:

> The parties shall indemnify and hold harmless the other against and in respect of any and all representations and warranties made herein, the conditions herein expressed, and in the event of a dispute the prevailing party successful in that dispute shall be entitled to all reasonable costs, including reasonable attorney's fees to be paid it.

(Ex. N, ¶ 7D). The second clause read:

> Reasonable attorney's fees and legal expenses incurred by either party in pursuing its rights and remedies shall be paid by the unsuccessful party to such dispute....

(Ex. N, ¶ 11A).

Dr. Toepp's Employment Agreement provided that he would be compensated as follows:

> For all services rendered to [Dr. Salcedo] by [Dr. Toepp], [Dr. Salcedo] agrees to pay semi-monthly all income earned by [Dr. Salcedo] from work and employment [sic] credits earned through the efforts of [Dr. Toepp] equal to 40% of the amount collected, excluding any non-payable amounts.... [Dr. Salcedo] guarantees [Dr. Toepp] work equal to fifty percent (50%) of all new patients received by [Dr. Salcedo] during the term of the Employment Contract with the same 40% being

---

1. All trial exhibits were placed in an envelope found in the record at page 1290.

paid to [Dr. Toepp] whether [Dr. Toepp] is treating new or current patients. . . .

(Ex. Q, ¶ 4). This Employment Agreement contained yet another attorney fee provision which read as follows:

ARBITRATION. Any controversy or disagreement [between] the parties to this agreement shall be governed by the laws of the State of Indiana and determined by arbitration in the City of South Bend in accordance with the rules of the American Arbitration Association and judgment on any award or determination so made may be entered in any court having [jurisdiction], with all costs to enforce this agreement, including reasonable attorney fees, payable to the prevailing party.

(Ex. Q, ¶ 8).

The Lease Agreement governed the South Bend office premises, and provided that Dr. Salcedo could lease the building for three years with the right to extend the lease for an additional three years. (Ex. O, ¶ 24). Thus, the term of the lease expired on December 31, 1993, and Dr. Salcedo could renew the lease until December 31, 1996, the date the noncompetition agreement would expire. (See Ex. Q, ¶ 2, 6). The Lease also provided Dr. Salcedo with an option to purchase the building as follows:

[Dr. Toepp] shall present to [Dr. Salcedo] any bona fide offers of purchase received for the property and [Dr. Salcedo] shall have fifteen (15) days from receipt to exercise [his] option to purchase under the same terms and conditions contained in the offer presented.

(Ex. Q, ¶ 25). The Lease contained the following clause regarding attorney fees:

In the event of any legal action or proceeding between the parties hereto, reasonable attorney's fees and expenses of the prevailing party in any such action or proceeding may be added to the judgment therein. .

(Ex. O, ¶ 20).

Mrs. Toepp's Employment Agreement read, in pertinent part, as follows:

For all services rendered to [Dr. Salcedo] by [Mrs. Toepp], [Dr. Salcedo] agrees to pay a gross monthly salary of Seven Hundred Dollars, less withholding and social security taxes. [Dr. Salcedo] will carry health and life insurance coverage on [Mrs. Salcedo] with the same coverage, terms and deductibles as is currently being carried by [Dr. Toepp]. . . .

(Ex. V, ¶ 4). The purpose of Mrs. Toepp's employment agreement was to enable her to continue her health insurance coverage which had been maintained through Dr. Toepp's practice. (R. 683–84). It had not been expected that Mrs. Toepp would provide any services for Dr. Salcedo, nor did he request any services from Mrs. Toepp over the term of the contract. Id. Mrs. Toepp's Employment Agreement contained no provision for attorney fees.

## B. The Dispute

The Toepps have a daughter, ("Daughter"), who is also a podiatrist. (R. 723). In 1993, Dr. Toepp began assisting his daughter in establishing a practice in the South Bend area by providing financial assistance for the purchase of medical equipment. (R. 723–24). Dr. Toepp also taught Daughter some surgical techniques. (R. 1162–63). Moreover, Dr. Toepp encouraged patients of the South Bend practice to see him at the New Carlisle office. (R. 700; 813–15). Also, Dr. Toepp encouraged patients to take their business to Daughter. (R. 850–51).

Dr. Salcedo decided not to relet the South Bend building for an additional three years because the expiration of the term of that lease would correspond to the expiration of the noncompete agreement, December 31, 1996; and, Dr. Salcedo was concerned that, at that point, Dr. Toepp would permit Daughter to open a podiatry office at that location. (R. 714, 717). Dr. Salcedo discussed purchasing the South Bend office from Dr. Toepp. (R. 712). However, Dr. Toepp represented to Dr. Salcedo that he was not interested in selling the building. (R. 712–13). There was no dispute that this location was the best in town for a podiatry practice because podiatry had been practiced there for many years. (R. 907–09). Due to these circumstances, Dr. Salcedo made plans to relocate his practice. (R. 713–14).

Then, in November of 1993, the Toepps told Dr. Salcedo that they had decided to sell the South Bend building to Daughter. (R. 734–35). On December 15, 1993, Dr. Salcedo received a copy of a contract to purchase the property executed by Daughter. (R. 735–36). Dr. Salcedo was given 15 days to exercise his option to purchase the building under the same terms, which required the payment of $250,000.00 for the property, including a $20,000.00 down payment with two additional payments of $10,000.00 in January and February of 1994. (Exhibit T). In addition, monthly payments of not less than $1,500.00 were to be required for a term of twenty years. *Id.* Dr. Salcedo obtained an appraisal of the building from Mrs. Toepp's brother. (R. 736–37). The property appraised for $190,000.00. *Id.* Dr. Salcedo rejected the offer because the $250,000.00 purchase price was $60,000.00 more than the market price. (R. 737–39).

On December 31, 1993, Daughter purchased the building. (R. 1044). However, the actual terms of the purchase were much better than those contained in the offer extended to Dr. Salcedo. (R. 1044–46). Daughter was only required to make payments of $1,500.00 per month until the contract was paid in full. (R. 1045). At this rate, Daughter would take almost 37 years to pay the purchase price. *Id.* Moreover, the Toepps loaned Daughter the $20,000.00 down payment, and permitted her to make the two $10,000.00 payments in June of 1994. (R. 878–79). In June of 1994, the Toepps loaned Daughter $50,000.00. (R. 878–80). The Toepps did not offer to finance Dr. Salcedo's purchase of the building. (R. 740).

In April of 1994, Daughter sent Dr. Salcedo a letter confirming that she would be opening her own podiatry office at the South Bend building. (R. 686, 740–41). At that point, Dr. Salcedo determined that the Toepps were in breach of the noncompetition agreement. (R. 686–87). Accordingly, Dr. Salcedo stopped making payments to Dr. Toepp under the note described in the Purchase Agreement. *Id.* However, Dr. Salcedo did continue to maintain Mrs. Toepp's health insurance at all relevant times. (R. 687).

## Procedural History

Dr. Salcedo initiated the present litigation in 1994. (R. 10). The Toepps raised counterclaims. (R. 44). The matter was tried to a jury over six days in December of 1996. (R. 634). The jury entered the five verdicts listed above in the **Case Summary**.

The Toepps filed an Ind.Trial Rule 50 motion requesting relief with respect to the verdicts pertaining to the Purchase Agreement, Dr. Toepp's Employment Agreement, and Mrs. Toepp's Employment Agreement. (R. 403). As discussed previously, the trial court granted the motion in part, ordering that a new trial be held on the claims and counterclaims arising out of the Purchase Agreement. (R. 553–60). The trial court entered judgment on the remaining verdicts. *Id.* The trial court's order for a new trial on the Purchase Agreement read, in pertinent part, as follows:

> The basis of Dr. Salcedo's claim of damages is the testimony of [his expert witness]. The focus in both was Dr. Salcedo's lost income, past and future. Conceding that evidence was presented to support lost income to the trial date and thereafter, the critical question is whether there was evidence to connect that loss with a breach of any of the five contracts by Dr. Toepp, i.e. causation. Having examined the contracts, [the court finds that the verdict was based upon the non-competition clause in the Employment Agreement].

> . . .

> The record is devoid of any evidence that would support the amount of the verdict, [except Dr. Salcedo's expert's exhibit]. Dr. Toepp conceded that subsequent to December 31, 1993 he had seen patients at his New Carlisle office who had formerly been treated at the [South Bend] office. He also admitted doing thirteen surgeries at Michiana Community Hospital, which is within the ten mile radius, during 1994, and an unknown number there in 1995. Whether his treatment of patients at the New Carlisle office even violated [the non-competition clause] is questionable. In any event, the jury's damages far exceeded any rational loss of income to Dr. Salcedo

proximately resulting from any violation by Dr. Toepp.

In the event the jury concluded that Dr. Toepp violated [the noncompetition clause] by selling the [South Bend] property to his daughter, Kathleen (also a podiatrist at that point in time). The language of the provision simply does not support it. The unambiguous terms prohibit leasing property. Conspicuous by its absence is any prohibition against selling 'any property which engages in or owns such a business . . .' (podiatry). There was no evidence that the doctors had agreed and intended to include such a provision in their contract, but through scrivener's error, or whatever reason it was omitted from the final draft. Nor was there any evidence of fraud or misrepresentation of facts prior to entering into the contract. The court is not at liberty to redraft the parties' agreement.

. . .

3. Dr. Salcedo's verdict on Dr. Toepp's counterclaim arising out of the Purchase Agreement and promissory note. Suffice it to say that an award of compensatory damages in an action involving a breach of contract is to place the non-breaching party in the position he would have been in had the breach not occurred. The evidence was undisputed that Dr. Salcedo was indebted to Dr. Toepp per the Purchase Agreement and promissory note. The only amount in evidence was that provided by Dr. Toepp: $65,367. Interestingly, the testimony of [Dr. Salcedo's expert and his exhibit], in essence credits Dr. Toepp in that amount in determining the amount of Dr. Salcedo's damages for 1993 through October, 1996. Possibly, the jury "netted out" Dr. Toepp's counterclaim in assessing Dr. Salcedo's damages. As noted above, however, the basis of those damages is uncertain.

. . .

Applied to this lawsuit, the court concludes that the jury's verdict [of $102,-597.62 in favor of Dr. Salcedo], is the result of an inference, i.e. Dr. Salcedo's lost income, which may not be drawn without undue speculation, based on the evidence

presented. Likewise, [the verdict in favor of Dr. Salcedo on Dr. Toepp's counterclaim under the Purchase Agreement], may not be made due to the uncertainty whether the jury considered Dr. Toepp's claim under the Purchase Agreement and promissory note and reduced the award accordingly, or whether they ignored it contrary to the evidence presented.

(R. 555–58). This appeal followed.

## Discussion and Decision

### I. Ind.Trial Rule 50(C) Order

#### A. Standard of Review

■ Indiana Trial Rule 50 reads, in pertinent part, as follows:

**(A) Judgment on the Evidence—How Raised—Effect.** Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

. . .

**(C) New Trial in Lieu of Judgment on the Evidence.** When a judgment on the evidence is sought before or after the jury is discharged, the court may grant a new trial as to part or all of the issues in lieu of a judgment on the evidence when entry of a judgment is impracticable or unfair to any of the parties or otherwise is improper, whether requested or not.

The granting or denial of a motion for a new trial is within the broad discretion of the trial court and will be reversed only for the abuse of that discretion. *Liberty Mutual Insurance Co. v. Blakesley*, 568 N.E.2d 1052, 1057 (Ind.Ct.App.1991). As stated in *Liberty:*

On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evi-

dence or reasonable inferences to be drawn therefrom to support an essential element of the claim.

*Id.* Under T.R. 50(C), the trial court may not act as a "thirteenth juror" and weigh the evidence and judge witness credibility. *Keith v. Mendus,* 661 N.E.2d 26, 31 (Ind.Ct. App.1996), *trans. denied.* The trial court may only order a new trial as the "thirteenth juror" under Ind.Trial Rule 59(J). *Id.*

### B. Purchase Agreement

■ In its order directing a new trial on the claims and counterclaims arising out of the Purchase Agreement (as set out above), the trial court sifted the evidence, noting Dr. Toepp's solicitation of patients from the South Bend practice and the surgeries conducted within the ten-mile limitation of the noncompetition clause. The trial court noted further that the noncompetition clause did not contain specific language which prevented Dr. Toepp from selling the practice to Daughter, and thus concluded that the jury could not properly award damages on this basis. Based on this analysis, the trial court concluded that Dr. Toepp's violation of the noncompetition clause could not have rationally resulted in the damages awarded by the jury.

■ Dr. Salcedo claimed that he had lost earnings due to Dr. Toepp's assistance in establishing Daughter's practice. Dr. Salcedo also claimed that he had not received the benefit of his bargain in purchasing the noncompetition clause. The jury could reasonably have found that Dr. Toepp violated the noncompetition clause by "engag[ing] in any business in competition with [Salcedo] ... either directly or indirectly as an ... investor...." (Ex. Q ¶ 6). The evidence revealed that Dr. Toepp provided Daughter, who was undeniably a competitor of Salcedo, with substantial financial subsistence enabling her to set up her own podiatry practice in the South Bend building where the former practice had been. A large part of the evidence regarding the valuation of Dr. Salcedo's damages focused upon the lost income attributable to Daughter's competition. (Ex. GGGG–3). Dr. Toepp's expert conceded that the methodology employed by Dr. Salce-

do's expert was appropriate. (R. 1099–1101). Thus, the jury could reasonably have awarded Dr. Salcedo the lost income attributable to Dr. Toepp's backing of Daughter as Salcedo's competitor. Therefore, we believe that the trial court erred in concluding that "the jury's damages far exceeded any rational loss of income to Dr. Salcedo proximately resulting from any violation by Dr. Toepp." (R. 556). Next, we address the concern regarding the $65,367.00 owed under the promissory note given by Dr. Salcedo to Dr. Toepp under the Purchase Agreement. Although the trial court noted that Dr. Salcedo's expert's valuation 'netted out' the amount owed under the promissory note, and that the jury could have 'netted out' that amount in computing their award of damages to Dr. Salcedo, the trial court nevertheless ordered a new trial "due to the uncertainty whether the jury considered Dr. Toepp's claim under the Purchase Agreement and promissory note and reduced the award accordingly, or whether they ignored it contrary to the evidence presented." (R. 557–58). At the outset we note that our inability to look into the minds of jurors and determine how they computed an award is, to the large extent, the reason a verdict will be upheld if the award falls within the bounds of the evidence. *See Symon v. Burger,* 528 N.E.2d 850, 853 (Ind.Ct.App.1988). Moreover, the trial court instructed the jury as follows:

> Under Indiana law one who seeks to enforce a contract for his benefit must show that he has performed all conditions on his part that were required to be performed before he may assert a claim for breach of contract against the other party. Thus, where the seller of a business agrees to a covenant not to compete with the buyer, but he, in fact, violates that covenant and competes against the buyer, the seller is not entitled to assert a claim for payments from the buyer for compensation for his promising not to compete.

(R. 341). Dr. Toepp did not lodge an objection to the giving of this instruction. Thus, the instruction has become the law of the case. *See Prange v. Martin,* 629 N.E.2d 915, 919 (Ind.Ct.App.1994), *trans. denied.* As such, the instruction has become the stan-

dard under which we review the case. *Id.* A jury verdict within the contemplation of the instructions given is insulated from attack on appeal. *Ingersoll–Rand Corporation v. Scott,* 557 N.E.2d 679, 682–83 (Ind.Ct.App. 1990) (trial court's denial of T.R. 50 relief was appropriate because the verdict was within the contemplation of the instructions, albeit erroneous, given to the jury), *trans. denied.*

The jury's award of damages to Dr. Salcedo is within the scope of the evidence because, as the trial court noted, the verdict may have netted out the amount due Dr. Toepp under the promissory note. Furthermore, under the law of the case as established by the instruction set out above, the jury, having found Dr. Toepp in breach of the Purchase Agreement/noncompetition clause, could have found that Dr. Toepp was not entitled to further payments due under the note.

The jury verdicts in favor of Dr. Salcedo on his claim, and Dr. Toepp's counterclaim under the Purchase Agreement are supported by substantial evidence or reasonable inferences to be drawn therefrom to sustain each essential element of the claim as well as the amount awarded. Therefore, we must conclude that the trial court abused its discretion in setting aside the verdicts in favor of Dr. Salcedo on the Purchase Agreement. Accordingly, we reverse and remand with instructions that judgment be entered on those verdicts.

## II. Inadequate Damages Awarded Dr. Toepp Under His Employment Agreement

Dr. Toepp cross-appeals, arguing that the jury's award of $8,933.99 to him under his Employment Agreement was inadequate as a matter of law. Dr. Toepp conducts an analysis of the evidence most favorable to himself in asserting that he should have been awarded $11,002.91. (Appellee's brief at 32).

### A. Standard of Review

■ When reviewing a claim that a jury's award of damages is insufficient, we look only to the evidence and inferences which support the award of damages, and

will affirm if the award falls within the bounds of the evidence presented at trial. *Adams v. McClevy,* 582 N.E.2d 915, 918 (Ind. Ct.App.1991). We will affirm, unless it is obvious that the award must have been the result of passion, prejudice, or improper motive because it cannot be explained in any other way. *Id.*

### B. Inadequate Damages

■ As noted above, Dr. Toepp's Employment Agreement provided that he would be compensated pursuant to a complex formula based on the collections earned by the practice through Dr. Toepp's efforts and the number of new patients served by the practice. Dr. Salcedo testified that, after going through the office records, he had determined that Dr. Toepp had actually received more compensation than he had been entitled to when one took into consideration the amount of time Dr. Toepp spent at his New Carlisle office and on vacation; and thus, Dr. Toepp was not entitled to any additional compensation under his Employment Agreement. (R. 1222–23).

Obviously, the evidence was conflicting and the amounts due Dr. Toepp were disputed. In any event, we cannot conclude that the jury's award of almost $9,000.00, and not $11,000.00, is obviously the result of passion, prejudice, or improper motive. As the award was within the bounds of the evidence, we find no error.

## III. Mrs. Toepp's Employment Agreement

Mrs. Toepp asserts that it is undisputed that Dr. Salcedo owed her $7,350.00 under her Employment Agreement representing the agreed upon wage rate of $700.00 per month less amounts deducted for taxes and health insurance. (Appellee's brief at 29–30). Therefore, she asserts that the jury's verdict in favor of Dr. Salcedo on her claim under her Employment Agreement is contrary to law.

### A. Standard of Review

■ Mrs. Toepp concedes that she is appealing a negative judgment. (Appellees' brief at 28). As such, she must establish that

the uncontradicted evidence leads to but one conclusion, opposite that of the judgment. *See Hamlin v. Steward,* 622 N.E.2d 535, 538 (Ind.Ct.App.1993). While a jury's verdict may be overturned if it is legally or logically inconsistent, contradictory or repugnant, the courts will indulge every reasonable presumption in favor of the legality of the verdict. *Emerson v. Markle,* 539 N.E.2d 35, 39 (Ind.Ct.App.1989), *trans. denied.* On appeal, a judgment will be sustained upon any theory consistent with the evidence, and the appellate court will neither weigh the evidence nor judge the credibility of witnesses. *Darlage v. Drummond,* 576 N.E.2d 1303, 1307 (Ind. Ct.App.1991).

### B. Waiver

 Ordinarily, a party can waive any contractual right provided for his or her benefit. *Terre Haute Regional Hospital Inc. v. El–Issa,* 470 N.E.2d 1371, 1379 (Ind.Ct.App. 1984), *trans. denied.* A condition in a contract may be waived by the conduct of the party. *Parrish v. Terre Haute Savings Bank,* 431 N.E.2d 132, 135 (Ind.Ct.App.1982), *trans. denied.* Once a condition has been waived, and such waiver has been acted upon, the failure to perform the condition cannot be asserted as a breach of contract. *Id.* at 135–36.

 In the present case, there is no dispute that the purpose of Mrs. Toepp's Employment Agreement was to enable her to continue her health insurance through the practice. Despite the plain language of the agreement, it had not been intended or expected that she perform services for Dr. Salcedo. Thus, the jury could reasonably have concluded that, just as Dr. Salcedo had waived his right to receive services from Mrs. Toepp under the contract, Mrs. Toepp had waived her right to compensation over and above the health insurance coverage that Dr. Salcedo provided through the practice. Therefore, we must conclude that Mrs.

Toepp has not met her burden of overcoming a negative judgment.

### IV. Attorney Fees

Dr. Salcedo asserts that he is entitled to attorney fees as the prevailing party under the Purchase Agreement.[2] Dr. Toepp asserts that he is entitled to attorney fees as the prevailing party under his Employment Agreement. Dr. Toepp also asserts his entitlement to attorney fees under the Lease Agreement for successfully defending against Dr. Salcedo's claim.

### A. Propriety of Award

 Indiana follows the American Rule which ordinarily requires each party to pay their own attorney's fees. *Willie's Construction Co. v. Baker,* 596 N.E.2d 958, 963 (Ind.Ct.App.1992), *trans. denied.* Attorney fees are not allowable in the absence of a statute or agreement between the parties. *Id.* A contract that allows for the recovery of attorney fees will be enforced according to its terms unless it is violative of public policy. *Id.*

### B. Contract Interpretation

 In the present case, as noted above, the several written contracts have distinct provisions regarding attorney fees. Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. *George S. May International Co. v. King,* 629 N.E.2d 257, 260 (Ind.Ct.App.1994), *trans. denied.* In construing a contract, we presume that all provisions were included for a purpose, and if possible we reconcile seemingly conflicting provisions to give effect to all provisions. *Id.* at 261. In the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction will be construed together in determining the contract. *Bera-*

---

**2.** Dr. Toepp asserts Dr. Salcedo's claim for attorney fees is premature due to the new trial ordered on the issues related to the Purchase Agreement. However, the attorney fee issue is ripe due to our reversal of the T.R. 50 order and instruction that judgment be entered on the verdicts under Issue I. Mrs. Toepp asserts that she is entitled to attorney fees as part of the remedy afforded to employees pursuing a claim for unpaid wages under Ind.Code § 22–2–5–2. However, we need not address this issue because we have affirmed the judgment against Mrs. Toepp on her claim for unpaid wages under Issue III.

*di v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259, 1261 (Ind.Ct.App.1993), *trans. denied.* We must accept an interpretation of the contract which harmonizes all the various parts so that no provision is deemed conflicting with, repugnant to, or neutralizing of any other provision. *George S. May*, 629 N.E.2d at 261. When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Id.*

### C. Purchase Agreement

■ The Purchase Agreement unambiguously provides for an award of reasonable attorney fees to the prevailing party. (Ex. N, ¶¶ 7D, 11A). In fact, the Purchase Agreement contains two attorney fees clauses. *Id.* Therefore, Dr. Salcedo is entitled to such an award in the present case to compensate him for litigating the competing claims under the Purchase Agreement. We reach this conclusion despite the fact that the portion of the Purchase Agreement violated, the noncompetition clause, was contained in (and incorporated by reference from) the Employment Agreement which, as will be discussed below, contained an attorney fees clause which could not be enforced under the circumstances. We hold that the harmonization of these seemingly conflicting provisions is appropriate because the gravamen of Dr. Salcedo's claim was Dr. Toepp's violation of the Purchase Agreement which allocated nearly $80,000.00 of consideration to the noncompetition clause which, although it was incorporated from Dr. Toepp's Employment Agreement, did not otherwise concern the terms of his employment. Consequently, we believe that the one arbitration/attorney fees provision in the Employment Agreement should not be interpreted to neutralize the two clauses in the Purchase Agreement. *See George S. May*, 629 N.E.2d at 261.

### D. Dr. Toepp's Employment Agreement

■ The trial court found that Dr. Toepp was not entitled to an award of attorney fees under his Employment Agreement, despite his prevailing party status, because that agreement provided for an award of fees and costs only in the context of arbitration. (R. 559–60; Ex. Q ¶ 8 (set out in FACTS sec-

tion)). We agree. As the parties chose not to submit the matter to arbitration, we conclude the American rule prevails, the arbitration/attorney fees provision does not operate, and both parties are responsible for their own attorney fees for litigating the amounts due Dr. Toepp under his Employment Agreement.

### E. Lease Agreement

■ As discussed above, the jury entered a verdict in favor of Dr. Toepp on Dr. Salcedo's claim under the Lease Agreement. The pertinent portion of the attorney fees provision of the Lease Agreement read:

> In the event of any legal action or proceeding between the parties hereto, reasonable attorney's fees and expenses of the prevailing party in any such action or proceeding may be added to the judgment therein.

(Ex. O, ¶ 20).

The trial court found that no attorney fees would be appropriate under the present circumstances reasoning that:

> The jury's verdict on Dr. Salcedo's claim under the lease agreement was a defendant's verdict. In essence, the jury found no money was due to Dr. Salcedo. It is the court's reading of the applicable language that attorney fees are to be included only in the event a money judgment is entered in favor of any of the parties.

(R. 560).

■ "Prevailing party" denotes a party who successfully prosecutes his claim or *asserts his defense*. *Strutz v. McNagny*, 558 N.E.2d 1103, 1110 (Ind.Ct.App.1990) (citing BLACK'S LAW DICTIONARY 1069 (5th ed. 1979)), *trans. denied.* Where the defendant is the prevailing party, we see no impediment to the addition of fees to a defendant's "judgment." Therefore, Dr. Toepp is entitled to a reasonable attorney's fee for successfully defending against Dr. Salcedo's claim under the Lease Agreement.

### Conclusion

We reverse and remand with instructions that judgment in the amount of $93,663.63 ($102,597.62 − $8,933.99) be entered in favor of Dr. Salcedo against Dr. Toepp on the

verdicts pertaining to the competing claims under the Purchase Agreement and Dr. Toepp's Employment Agreement. *See* Ind.Appellate Rule 15(N); Ind.Trial Rule 13(C) & (M); *Moridge Manufacturing Company v. Butler,* 451 N.E.2d 677, 681–82 (Ind. Ct.App.1983) (the plaintiff's judgment is reduced by the amount found due on the counterclaim). Furthermore, we remand with instructions that the trial court hold a hearing to determine a reasonable attorney's fee to be awarded Dr. Salcedo in litigating the competing claims under the Purchase Agreement as well as a reasonable attorney's fee to be awarded Dr. Toepp for successfully defending against Dr. Salcedo's claim under the Lease Agreement. In all other respects, we affirm.

STATON and GARRARD, JJ., concur.