**ANDERSON PROPERTY MANAGEMENT, LLC, Appellant–Defendant,**

v.

**H. ANTHONY MILLER, JR., LLC, Appellee–Plaintiff.**

No. 43A03–1003–PL–239.

Court of Appeals of Indiana.

March 8, 2011.

Thomas W. Earhart, Warsaw, IN, Attorney for Appellant.

Stephen R. Snyder, Randall L. Morgan, Snyder, Birch & Morgan LLP, Syracuse, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Anderson Property Management, LLC ("Anderson") appeals the trial court's judgment ordering enforcement of the parties' mediated agreement in a declaratory judgment action brought by H. Anthony Miller, Jr., LLC ("Miller") arising from a sale of commercial real estate in Warsaw, Indiana.

We reverse in part, vacate in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY[1]

Miller owned certain real estate located at 727 North Detroit Street, Warsaw,

---

1. Oral argument was held on January 19, 2011 at Purdue University's Krannert Gradu-

Indiana, on which was located a single building that contained both manufacturing and office facilities. On May 24, 2004, the parties entered into an agreement ("Sale Agreement") whereby Miller agreed to sell part of its real estate, including the office portion of the facility, to Anderson. Miller commissioned John Kimpel & Associates ("Surveyor") to perform a land survey of the portion of the land that Anderson was purchasing. The Surveyor marked the boundaries of Anderson's property on the survey, but no visible exterior markers, flags, or pins were placed on the property to designate the common property line.

As part of the Sale Agreement, the parties agreed that Miller would demolish the part of the building that straddled the property line in order to separate the single building into two independent structures. The parties' common property line ran east to west, with the Anderson property on the north side and the Miller property on the south side of the property line. The Sale Agreement provided that, once completed, the buildings would have forty feet of open space between them; comprised of twenty feet south from Anderson's building to the common property line and twenty feet north from Miller's building to the common property line. The Sale Agreement also included provisions designating which party would bear the responsibility for paying for the separation of the utilities serving the buildings and for the demolition and refacing of the buildings.

In the Sale Agreement, Anderson granted Miller an affirmative easement of ingress, egress, and parking over the east 100 feet of the entire Anderson tract. The affirmative easement was appurtenant to and ran with the title to the Miller tract. The parties also granted to each other negative easements providing as follows:

> Anderson grants to Miller a negative easement prohibiting Anderson from constructing any permanent improvements in the south 20 feet of the Anderson tract.

> Miller grants to Anderson a negative easement prohibiting Miller from constructing any permanent improvements in the north 20 feet of the Miller tract.

*Appellant's App.* at 31. The negative easements were appurtenant to and ran with the title to the respective Miller tract or Anderson tract. *Id.*

Based on the survey, and in conformity with the Sale Agreement, Miller began demolishing a portion of the connected part of the building in order to separate its part of the building from Anderson's part of the building, and to provide the required distance of twenty-feet between the Miller building and the common property line. Before the work was complete, however, a dispute arose regarding the extent of the required demolition of Anderson's portion of the building.

Miller filed a complaint requesting a declaration of the parties' rights and obligations under the Sale Agreement and its easements. At Anderson's request, the parties participated in mediation discussions and reached a settlement that was reduced to a handwritten agreement

ate School of Management. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, for participating in post-argument discussions with the audience, and for commuting to West Lafayette. We especially thank the Executive Education Program at the Krannert Graduate School of Management for their accommodations and the students in the audience for their thoughtful post-argument questions.

signed by the parties ("Mediated Agreement"). *Appellant's App.* at 45.

The Mediated Agreement provided:

The parties presume that existing building of Defendant, except 3' encroachment, is located on Defendant's property as verified by survey (1/2 to each party of cost).

The parties agree, contingent on above:

1) Plaintiff will pay $15,000.00 to Defendant on or before when East demolition of building is completed;

2) Defendant will demolish all buildings within 100' easement on or before 60 days;

3) Plaintiff will give Defendant an easement for approximate 3' encroachment on Plaintiff's property (limited so long as encroachment exists) of existing building;

4) Defendant to pay all other expenses per prior obligations of Plaintiff from prior agreements; and

5) Defendant relieved from demolishing building outside 100' easement within 20' neg. easement west of the 100' easement. The existing negative easement will be modified to allow all current structures, except if destroyed or removed, no new construction. If 80% accidentally destroyed, no new construction as determined by Warsaw Fire Chief.

In conformance with the Mediated Agreement, the Surveyor completed a second survey ("Second Survey"). The Second Survey revealed that Anderson's building, in some places, encroached as much as 7.3 feet onto Miller's property. *Id.* at 44.

Approximately one month after Anderson received the Second Survey, Miller was notified that Anderson considered the Mediation Agreement unenforceable due to the extent of the encroachment depicted on the Second Survey. *Appellee's Br.* at 6. Miller then filed a motion requesting the trial court to enforce the Mediated Agreement and to order Anderson to pay the fees and costs incurred by Miller to enforce the Mediated Agreement.

Following a hearing on the matter, and pursuant to Anderson's request, the trial court entered its "Amended Findings, Conclusions and Judgment" on March 10, 2010 ("March Order"), which in pertinent part provided as follows:

*Findings*

The Court **NOW FINDS:**

____

6. Pursuant to the [M]ediated [A]greement, John Kimpel & Associates performed a survey which was documented September 2, 2009.

7. The survey sets forth an encroachment of Defendant's [Anderson's] building upon Plaintiff's [Miller's] real estate in a minimum amount of 4.3 feet and a maximum amount of 7.3 feet.

8. After receipt of the documentation of survey dated September 2, 2009, Plaintiff, by counsel, submitted to counsel for Defendant an amendment to negative easement to allow the encroachment as shown by the documentation of survey dated September 2, 2009.

9. Defendant would not accept the amendment to negative easement.

10. Plaintiff and Defendant agree that the [M]ediated [A]greement is not ambiguous.

11. No evidence was submitted that the performance of the [M]ediated [A]greement would violate any law.

*Conclusions*

The interpretation of an unambiguous contract is a matter of law. In interpret-

ing a contract, all of the terms of the contract must be examined.

The [M]ediated [A]greement sets forth a condition precedent, that is, the encroachment of Defendant's building upon Plaintiff's real estate is three (3) feet.

Defendant's position is that the encroachment must be exactly three (3) feet, no more, no less, or the [M]ediated [A]greement is unenforceable. Such a position would mean the [M]ediated [A]greement would be unenforceable if the encroachment was less than three (3) feet.

If the encroachment was less than three (3) feet, such would be of a benefit to Plaintiff. There would be less of a burden to Plaintiff's real estate by way of the agreed negative easement. Plaintiff, by way of the [M]ediated [A]greement, agreed to burden Plaintiff's real estate up to, but not exceeding, three (3) feet. After the determination by survey of the extent of the encroachment by Defendant's building, Plaintiff agreed to burden its real estate to a greater extent than three (3) feet.

A condition precedent in a contract may be waived.

The party to waive the condition precedent of the [M]ediated [A]greement is Plaintiff, for the reason the negative easement will burden Plaintiff's real estate for a greater distance than three (3) feet.

Plaintiff has waived the condition precedent. The [M]ediated [A]greement is enforceable.

*Judgment*

IT IS THEREFORE, ORDERED AND ADJUDGED that Plaintiff and Defendant execute and record the Amendment to Negative Easement sub-mitted herein ..., with written interlineations on or before April 30, 2010.

... that Plaintiff and Defendant each perform its obligation of the [M]ediated [A]greement on or before June 30, 2010.

... that each party shall pay its own attorney's fees.

*Appellant's App.* at 49–51. Anderson now appeals.

## DISCUSSION AND DECISION

Anderson maintains that the trial court erred in determining that the Mediated Agreement is enforceable and in ordering the parties to comply with its terms. Specifically, Anderson contends that the Mediated Agreement's three-foot condition precedent was not satisfied. *Appellant's Br.* at 20

Where, as here, the trial court enters findings of fact and conclusion thereon, our standard of review is two-tiered. *Bank One, Nat'l Ass'n v. Surber,* 899 N.E.2d 693, 701 (Ind.Ct.App.2009), *trans. denied.* "First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions." *Id.* "The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them." *Tompa v. Tompa,* 867 N.E.2d 158, 163 (Ind.Ct.App.2007). "A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made." *Id.* We do not reweigh the evidence or assess the credibility of witnesses, and we will only consider the evidence most favorable to the judgment. *Surber,* 899 N.E.2d at 702. Appellate review under Trial Rule 52(A) is interwoven with the applicable substantive law. *Bernel v. Bernel,* 930 N.E.2d 673, 681 (Ind.Ct.App.2010), *trans. denied* (2011).

■ Our courts have held that "[s]ettlement agreements are governed by the same general principles of contract law as any other agreement." *Fackler v. Powell*, 891 N.E.2d 1091, 1095 (Ind.Ct.App.2008) (citing *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind.1998)), *trans. denied* (2009). In this case, both parties agreed that the Mediated Agreement is unambiguous. *Tr.* at 18, 28. As our court noted in *Fackler:*

> The interpretation and construction of a contract is a function for the courts. If the contract language is unambiguous and the intent of the parties is discernible from the written contract, the court is to give effect to the terms of the contract. A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation; however, the terms of a contract are not ambiguous merely because the parties disagree as to their interpretation. When the contract terms are clear and unambiguous, the terms are conclusive and we do not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions.

891 N.E.2d at 1095–96 (internal citations omitted).

Here, Anderson is challenging the trial court's interpretation and construction of the Mediated Agreement. The language at issue (also referred to as the "Contingency Language") reads as follows:

> The parties presume that existing building of Defendant [Anderson], except 3′ encroachment, is located on Defendant's property as verified by survey (1/2 to each party of cost).
>
> The parties agree: contingent on above:
> · · ·

*Appellant's App.* at 36. Anderson contends that the Contingency Language creates a condition precedent.

■ "Under contract law, a condition precedent is a condition that must be performed before the agreement of the parties becomes a binding contract or that must be fulfilled before the duty to perform a specific obligation arises." *McGraw v. Marchioli*, 812 N.E.2d 1154, 1157 (Ind.Ct.App.2004). Therefore, Anderson argues that, because the parties entered into the Mediated Agreement contingent on the parties' presumption that the "existing building of Defendant, except for 3′ encroachment, is located on Defendant's property," when the encroachment was, in fact, greater than three feet, the Mediated Agreement was not binding on the parties. *Appellant's App.* at 49.

In its findings, the trial court set forth the terms of the Mediated Agreement, including the "Contingency Language," and concluded that the language constituted a condition precedent. *Appellant's App.* at 49, 50. We agree with the trial court that the plain meaning of the "Contingency Language" created a condition precedent.

■ The trial court *concluded* that Miller was the party burdened by the condition precedent, had the right to waive the condition, and in fact did waive the condition. *Appellant's App.* at 50–51. As our Supreme Court stated in *Salcedo v. Toepp*, 696 N.E.2d 426, 435 (Ind.Ct.App. 1998):

> Ordinarily, a party can waive any contractual right provided for his or her benefit. A condition in a contract may be waived by the conduct of the party. Once a condition has been waived, and such waiver has been acted upon, the failure to perform the condition cannot be asserted as a breach of contract.

*Salcedo*, 696 N.E.2d at 435 (internal citations omitted). However, as noted above, the Contingency Language provided:

> The *parties presume* that existing building of Defendant, except 3′ encroach-

ment, is located on Defendant's property as verified by survey (1/2 to each party of cost).

The *parties agree, contingent on above:* *Appellant's App.* at 49 (emphasis added). This language specifically states that the presumption was that of both *parties* and that the terms of their agreement were *contingent on* that presumption.

Because the condition precedent ran to the benefit of both parties, both parties must agree to waive it. The trial court concluded that Miller waived the condition when he submitted an amendment to negative easement to Anderson to allow the greater encroachment as shown by the documentation of the Second Survey, but that "[Anderson] would not accept the amendment to negative easement." *Appellant's App.* at 50. Anderson would not accept the negative easement and there was no other evidence that Anderson waived or intended to waive the condition precedent. The trial court erred in holding that Miller's unilateral waiver was sufficient to waive the condition precedent.

We reverse the trial court's holding that the Mediated Agreement is enforceable and the trial court's order that the parties execute and record the Amendment to Negative Easement and perform their respective obligations of the Mediated Agreement. We also vacate the trial court's order that each party shall pay its own attorney's fees and instruct the trial court to consider this issue when it enters final judgment in this proceeding.

Reversed in part, vacated in part, and remanded with instructions.

ROBB, C.J., and BRADFORD, J., concur.